J-S17002-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: K.J.K., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: P.A.L., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 506 EDA 2024 |

Appeal from the Decree Entered January 17, 2024
In the Court of Common Pleas of Lehigh County Orphans' Court at No(s):
A2023-0007

| | | |
|---|---|---|
| IN RE: A.S.K., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: P.A.L., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 507 EDA 2024 |

Appeal from the Decree Entered January 17, 2024
In the Court of Common Pleas of Lehigh County Orphans' Court at No(s):
A2023-0008

BEFORE:  BOWES, J., KING, J., and BENDER, P.J.E.

MEMORANDUM BY BOWES, J.:                    **FILED JULY 26, 2024**

P.A.L. ("Mother") appeals the January 17, 2024 decrees involuntarily terminating her parental rights to her daughters K.J.K., born in May 2014, and A.S.K., born in April 2018.[1]  We affirm.

---

[1] K.J.K. and A.S.K. are half-sisters.  In separate decrees entered on February 8, 2024, the orphans' court also involuntarily terminated the parental rights of K.J.K.'s biological father, M.O.M.-C., and A.S.K.'s biological father, J.H. Neither father appealed.  ***See*** Orphans' Court Opinion, 3/1/24, at 1-2 n.1.

We glean the relevant factual and procedural history of this matter from the certified record. The Lehigh County Office of Children and Youth Services ("CYS") has an extensive history with Mother's family. Specifically, Mother stipulated that "[CYS] has received [thirteen] referrals for this family for general protective supervision issues including; mental health concerns for [Mother], child neglect, homelessness, truancy, unsanitary living conditions, and substance abuse." CYS Exhibit 2A at 2.

In May 2020, CYS received a report alleging that Mother was homeless and abusing narcotics while caring for her two daughters. *See* N.T., 11/3/23, at 18-19. At that point in time, Mother was living a transient existence in and around Lehigh County, which made it difficult for CYS to establish in-person contact with her. *Id*. at 19. CYS's investigation confirmed the existence of Mother's homelessness and substance abuse issues with, *inter alia*, heroin, fentanyl, and methamphetamines. *Id*. at 63, 77. Thereafter, K.J.K. and A.S.K. were adjudicated dependent on July 30, 2020. *Id*. at 20-21.

A.S.K. and K.J.K. were placed in the home of a family friend, N.L. A.S.K. remained with N.L. throughout the ensuing dependency proceedings. *Id*. at 19, 25, 43. Shortly thereafter, K.J.K. was placed with N.L.'s daughter, S.D., where she has similarly remained for the majority of these proceedings. *Id*. at 25, 34, 43. Both placements are pre-adoptive.

Following their dependency adjudication, the children's initial permanency goal was established as reunification. In connection therewith, the court directed Mother to obtain appropriate housing, as well as complete

a drug and alcohol evaluation and submit to urine screenings. *Id*. at 26-27. Between September 2020 and February 2021, Mother's whereabouts were unknown and she demonstrated no compliance with her permanency objectives. *See* CYS Exhibit 2A at 6-10. Mother was finally located after she was incarcerated on criminal trespass charges in February 2021. *See* CYS Exhibit 1A at 2.

At a permanency review conducted in April 2021, the court deemed Mother to be non-compliant. In addition to the earlier directives, it ordered Mother to complete a mental health evaluation and attend supervised visitations with the children. *See* N.T., 11/3/23, at 51; *see also* CYS Exhibit 2A at 15. In January 2022, the court established a concurrent goal of adoption with respect to the children. *See* CYS Exhibit 2A at 21. Mother did not appeal that goal change. Thereafter, for more than two years between July 2021 and August 2023, the court consistently characterized Mother's compliance with her permanency objectives as minimal.

Throughout the dependency proceedings, Mother's compliance was largely obstructed by her criminal behavior. For example, she entered into the accelerated rehabilitation disposition ("ARD") program in connection with a criminal trespass charge. That sentence was revoked after she was arrested on new charges in January 2022, leading to a global plea to all outstanding charges and an aggregate sentence of three to twenty-three months of incarceration followed by two years of probation. Four months later, Mother was arrested for possession of drug paraphernalia. She pled guilty and the

court imposed a sentence of fines and costs without additional punishment. Ultimately, Mother was released from incarceration in September 2022 and began serving her probationary term. *See* N.T., 11/3/23, at 10-11. However, she ceased reporting to probation in August 2023 and a bench warrant was issued for her arrest. *Id*. at 11. On September 30, 2023, Mother was apprehended in Northampton County after she was arrested and charged with theft of services, false identification to law enforcement, possession of marijuana, and possession of drug paraphernalia. *Id*. at 13. At the time of the subject hearing, those charges remained pending. *Id* at 13-14. Consequently, she was also facing potential probation revocation in her other cases. *Id*.

On January 13, 2023, CYS filed a petition seeking to involuntarily terminate Mother's parental rights as to K.J.K. and A.S.K. pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b).[2] The orphans' court held the termination hearing on November 3, 2023, at which time K.J.K. was nine years old and A.S.K. was five years old. Therein, CYS adduced testimony from Mother's probation officer Heather Compton-Rodriguez, CYS caseworkers Taryn Zietlow and Jessica Vinson, and child welfare program supervisor Harold Kyle Borowski of Valley Youth House. CYS also introduced the records from

_____

[2] On February 2, 2023, the orphans' court appointed Brian Eves, Esquire, to dually serve as the children's legal counsel and guardian *ad litem* ("GAL") after determining that there was no conflict between their respective interests. *See* Scheduling Order, 2/2/23, at unnumbered 2 n.3.

- 4 -

Mother's criminal cases and the dependency proceedings. Mother was present, represented by counsel, and testified on her own behalf.

On January 12, 2024, the orphans' court entered decrees involuntarily terminating Mother's parental rights to K.J.K. and A.S.K. Mother timely filed separate notices of appeal at the above-captioned cases, along with concise statements of errors pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The orphans' court submitted a responsive Rule 1925(a) opinion. Mother has raised the following issues for our consideration:

> A. Did the [orphans'] court err as a matter of law and/or abuse its discretion in finding that [CYS] met the requirements of 23 Pa.C.S. § 2511(a)(1), (2), (5), and (8) by clear and convincing evidence?
>
> B. Did the [orphans'] court err as a matter of law and/or abuse its discretion in finding that [CYS] sustained [its] burden of proof by clear and convincing evidence that the termination of biological parents' parental rights [best met] the needs and welfare of the child[ren] as required by 23 Pa.C.S. § 2511(b)?

Mother's brief at 4.

> Our standard of review in this context is well-established:
>
> In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. When applying this standard, the appellate court must accept the trial court's findings of fact and credibility determinations if they are supported by the record. Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion.
>
> An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion or the facts could support an opposite result. Instead, an appellate court

may reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. This standard of review reflects the deference we pay to trial courts, who often observe the parties first-hand across multiple hearings.

In considering a petition to terminate parental rights, a trial court must balance the parent's fundamental right to make decisions concerning the care, custody, and control of his or her child with the child's essential needs for a parent's care, protection, and support. Termination of parental rights has significant and permanent consequences for both the parent and child. As such, the law of this Commonwealth requires the moving party to establish the statutory grounds by clear and convincing evidence, which is evidence that is so clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

*Interest of M.E.*, 283 A.3d 820, 829-30 (Pa.Super. 2022) (cleaned up).

The involuntary termination of parental rights is governed by § 2511, which calls for a bifurcated analysis that first focuses upon the "eleven enumerated grounds" of parental conduct that may warrant termination. *Id*. at 830; *see also* 23 Pa.C.S. § 2511(a)(1)-(11). If the orphans' court determines that the petitioner has established grounds for termination under at least one of these subsections by "clear and convincing evidence," the court then assesses the petition pursuant to § 2511(b), which focuses upon the child's developmental, physical, and emotional needs and welfare. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). This Court need only agree with the orphans' court's determination as to any one subsection of § 2511(a), in addition to § 2511(b), in order to affirm. *See M.E.*, 283 A.3d at 830 (citing *In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*)).

Our analysis focuses upon § 2511(a)(2) and (b), which provide as follows:

> **(a) General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . . .
>
> **(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2), (b).

In order to satisfy § 2511(a)(2), the petitioning party must establish: "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In re Adoption of A.H.*, 247 A.3d 439, 443 (Pa.Super. 2021). Grounds for

termination pursuant to § 2511(a)(2), however, "are not limited to affirmative misconduct, but concern parental incapacity that cannot be remedied." ***Id.*** (citing ***In re Z.P.***, 994 A.2d 1108, 1117 (Pa.Super. 2010)). On this point, we emphasize that "[p]arents are required to make diligent efforts toward the reasonably prompt assumption of full parental duties." ***Id.***

If a petitioner establishes adequate grounds for termination pursuant to § 2511(a), we then turn to § 2511(b), which requires that the court "give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). Our Supreme Court has outlined this general inquiry as follows:

> [C]ourts should consider the matter from the child's perspective, placing her developmental, physical, and emotional needs and welfare above concerns for the parent.
>
> Accordingly, the determination of the child's particular developmental, physical, and emotional needs and welfare must be made on a case-by-case basis. We have observed the law regarding termination of parental rights should not be applied mechanically but instead always with an eye to the best interests and the needs and welfare of the particular children involved. Thus, the court must determine each child's specific needs.
>
> Moreover, the child's emotional needs and welfare include intangibles such as love, comfort, security, and stability. As further guidance, we have identified factors, *i.e.*, specific needs and aspects of the child's welfare, that trial courts must always consider. The courts must consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents. And, if the child has any bond with the biological parent, the court must conduct an analysis of that bond, which is not always an easy task.

***Interest of K.T.***, 296 A.3d 1085, 1105-06 (Pa. 2023) (cleaned up).

The extent, however, of the "bond-effect analysis necessarily depends on the circumstances of the particular case." *In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa.Super. 2010) (cleaned up). It is the province of the orphans' court to "consider the totality of the circumstances when performing a needs and welfare analysis." *M.E.*, 283 A.3d at 839 (cleaned up). This Court has clarified that it is "within the discretion of the orphans' court to prioritize the safety and security" of children "over their bonds with their parents[.]" *Id*. We will not disturb such an assessment if the orphans' court's factual findings are supported by the record. *Id*.

Mother asserts that "the mere presence of mental health and substance abuse issues do not establish grounds upon which to make a determination of terminating parental rights." Mother's brief at 11. Mother contends that she "sought treatment," which the orphans' court allegedly failed to adequately consider. *Id*. Further, she maintains that she has turned a corner following her own mother's death in spring 2023, and that she demonstrated at the time of the hearing that she was ready to commit to caring for her children. *Id*. at 13.

The orphans' court concluded that the evidence adduced at the termination hearing unambiguously showed that Mother had ongoing incapacities related to her criminal behavior, substance abuse, mental health troubles, and homelessness. Although the orphans' court credited Mother's apparent sincerity in expressing her desire to reunite with her children, it

concomitantly found that her actions were not in harmony with her aspirations:

> [T]he long and short of it is that Mother has been unable to summon the resources to reunify with [the children] since May of 2020. She has shown a cyclical pattern: When incarcerated, she sobers up, but at some point after leaving prison and leaving rehab, real life out in the community taxes her resilience and she starts the cycle again. We don't doubt Mother's sincerity, or her love for [the children], but at this point, her expression of commitment to recovery is too little, too late.
>
> . . . .
>
> As of the date of the hearing, the children were ages nine and five and had been in placement continuously for over three years. Throughout this time, Mother had not been able to maintain suitable housing or stay consistent with her mental health or her battle with substance abuse.

Orphans' Court Opinion, 3/1/24, at 7-9. The court noted that "[i]n spite of her sincerity and obvious love for K.[J.K.] and A.[S.K.], Mother's recovery from substance abuse and her ability to be available to consistently provide proper parental care to [the children] is simply too speculative." *Id*. at 10.

Our review reveals ample support for the orphans' court's conclusions. Indeed, the underlying facts of these cases are not reasonably disputed. Beginning with the first prong, as testified to by Ms. Zietlow and Ms. Vinson, the primary concerns that led to the removal of K.J.K. and A.S.K. were Mother's homelessness and her interrelated substance abuse and mental health issues. *See* N.T., 11/3/23, at 20-21, 26-27, 59, 108. Ms. Zietlow testified that Mother lived "sporadically" around Lehigh County, vacillating between outright homelessness and temporary lodging in tent-based

- 10 -

communities or the homes of her immediate family and friends. *Id*. at 19-21. To that end, both CYS caseworkers testified that Mother's whereabouts were regularly unknown during the course of these proceedings. *Id*. at 24, 31-32, 43, 56-60, 70.

Similarly, the certified record demonstrates, through the respective testimonies of Ms. Zietlow and Ms. Vinson, Mother's abuse of illegal substances, including marijuana, opioids, and methamphetamines. *Id*. at 63, 77. Moreover, Mother's testimony made clear her mental health troubles, most evidently in her own description of her attempt to commit suicide by throwing herself in front of a train in June 2023. *Id*. at 134, 153.

As detailed in the factual recitation above, Mother's criminal behavior has led to her arrest and incarceration at numerous junctures. Ms. Compton-Rodriguez's testimony emphasized that Mother has significant criminal issues hanging over her immediate future, including the unresolved charges from Northampton County and the potential for probation revocation in her Lehigh County cases. *Id*. at 10-11, 13-14.

Overall, our review of the certified record leaves little question that Mother suffers from repeated and continued incapacities, in the form of her criminal behavior, substance abuse, mental health troubles, and homelessness. *See In re Adoption of S.P.*, 47 A.3d 817, 830 (Pa. 2012) ("[I]ncarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing essential parental

- 11 -

care, control or subsistence and the length of the remaining confinement can be considered as highly relevant to whether the conditions and causes of the incapacity . . . cannot or will not be remedied by the parent, sufficient to provide grounds for termination pursuant to 23 Pa.C.S. § 2511(a)(2)." (cleaned up)). Accordingly, the first prong of § 2511(a)(2) is satisfied here.

It is equally clear that Mother's incapacities have caused her children to be without essential parental care, control, and subsistence. Stated plainly, Mother's transient, lawbreaking lifestyle has largely estranged her from her daughters for the three years that these cases have progressed. Specifically, Ms. Vinson testified that Mother had no contact whatsoever with them between their removal from her care in July 2020 and November 2021, a period of more than one year. *Id*. at 56. Although she then resumed contact, Ms. Vinson testified that Mother again ceased all communication in January 2022. *Id*. at 60-61. Mother did not re-establish contact with K.J.K. and A.S.K. until January 2023, when visits restarted. *Id.* at 69-72. Ms. Vinson averred that Mother summarily vanished from the children's lives, once more, in approximately June 2023, shortly after Mother's unsuccessful suicide attempt. *Id*. at 71 ("She was struggling with both mental health and substance abuse issues at that time, and she kind of disappeared.").

The orphans' court acknowledged that Mother intentionally avoided seeing the children when incarcerated or relapsing so as to spare them from any associated potential trauma. *See* Orphans' Court's Opinion, 3/1/24, at 9.

However, her serial absences, regardless of any benevolent intent to protect K.J.K. and A.S.K., deprived them of critical parental support and care. Furthermore, Mother's habitual non-presence has also negatively impacted them on an emotional level. Specifically, Ms. Vinson reported that both girls exhibited troubling episodes of "rage" and "anger" in the days immediately before and after visitations with Mother. *See* N.T. 11/3/23, at 83-84.

From the testimony explicated above, it is beyond cavil that Mother's incapacities have caused both children to be without necessary parental control, care, and subsistence. Based upon the foregoing, we also conclude that the second element of § 2511(a)(2) has been satisfied in this case.

Finally, we turn to the third and final aspect of § 2511(a)(2), which concerns whether the causes of Mother's incapacities cannot or will not be remedied. On this point, the certified record definitively establishes that Mother's many attempts at rehabilitation have been uniformly unsuccessful. During the course of these proceedings, Ms. Vinson testified that Mother completed two separate periods of inpatient rehabilitation in 2021 and 2023, respectively. *Id*. at 48-49, 66-67. Ms. Vinson explained, however, that Mother was only able to maintain her sobriety and dedication while completely physically confined at an inpatient treatment facility or in a prison cell:

> **Q** . . . Is there any common theme as to when Mother is able to remain sober?
>
> **A** When she is in facilities. So prison. In an actual inpatient drug and alcohol facility. She can remain sober when she's in

those facilities. It's, unfortunately, when she comes out to society that . . . she struggles when she is not in a facility.

*Id*. at 110.

Additionally, the certified record indicates Mother enrolled in placement transition services with Abraxas and parenting support services through Lehigh Valley Families Together. *Id*. at 50, 56-57. She was also enrolled in mental health treatment with an unspecified provider through December 2021. *Id*. at 59. However, Mother was unsuccessfully discharged from these service providers for non-compliance and non-participation. *Id*. 50, 59-60. The evidence at the termination hearing indicates that she attended just fifteen of ninety-seven urinalysis screens scheduled between August 2021 and September 2023, with only one excused absence. *See* CYS Exhibit 5A.

Our review of the record reveals that Mother's incapacities will not be remedied within the meaning of § 2511(a)(2). She has not demonstrated the necessary diligence, nor has she promptly resumed her parental duties within a reasonable time frame. *See A.H.*, 247 A.3d at 443. Accordingly, we determine that the trial court did not err in concluding that CYS established statutory grounds for termination pursuant to § 2511(a)(2).

Having found that there is sufficient evidence to warrant termination pursuant to § 2511(a)(2), we turn to an assessment of § 2511(b). The orphans' court found that "[t]he children will be best served by remaining in the stable, consistent, loving care of their respective caregivers, and ultimately being adopted by their respective caregivers, than by waiting any

additional time hoping that Mother will be able to pull herself together." Orphans' Court Opinion, 3/14/24, at 11. The certified record supports these conclusions.

With respect to the analysis mandated by our Supreme Court, we note that Ms. Vinson generally opined that Mother shared a bond with each of her daughters, although that bond was stronger with K.J.K. *See* N.T., 11/3/23, at 82-83. However, she similarly averred that Mother's bond with the girls has significantly "lessened" over the last three years due to Mother's infrequent visits. *Id*.

By contrast, the children view their respective foster placements as their home. *Id*. at 86 ("The children have remained in their current kinship homes for three years, and is what they know as home as this point in time."). Ms. Vinson observed that the children have a "good relationship" with their caregivers, who, as noted, are both adoptive resources. *Id*. at 79-81. K.J.K. in particular has expressed eagerness at the prospect of being adopted. *Id*. at 81. In general, the record indicates that the children are well-cared for in their respective pre-adoptive foster homes. *Id*. at 78-81. Additionally, the sisters are able to visit each other at least twice per week in their current placements. *Id*. at 78-79, 109.

Based upon the foregoing, we find sufficient evidence to support the orphans' court's conclusions pursuant to § 2511(b).

In sum, we discern no abuse of discretion or error of law in the orphans' court's determination that the termination of Mother's parental rights as to K.J.K. and A.S.K. was warranted pursuant to 23 Pa.C.S. § 2511(a)(2) and (b). Thus, we affirm.

Decrees affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/26/2024